IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| LANDON ZURA, | : |
| *Plaintiff*, | : Case No. 1:24-cv-377 |
| vs. | : Judge Jeffery P. Hopkins |
| CITY OF CINCINNATI, *et al.*, | : |
| *Defendants*. | : |

**OPINION & ORDER**

How much harm can a taser cause? Quite a lot. Just ask Plaintiff Landon Zura ("Plaintiff" or "Zura"). In September 2023, police officers from the City of Cincinnati Police Department pursued Zura for an alleged motor vehicle infraction. During that pursuit, Officer Russell Ludwig discharged his taser, striking Zura in the back. Zura plummeted face-first into the pavement, suffering severe facial and head injuries as a result of the fall. Zura brings this case against three Defendants: Officer Ludwig, the City of Cincinnati, and Chief of Police Teresa Theetge (collectively, "Defendants"). Defendants seek to dismiss all of Zura's claims.

**I.   BACKGROUND**

In the early hours of September 29, 2023, police officers from the City of Cincinnati learned of a motor vehicle accident involving a parked car. Compl., Doc. 1, ¶ 16. There were no reported injuries. *Id.* Zura left his vehicle at the scene—only to be pursued by law enforcement shortly thereafter. *Id.* ¶ 16–17. Officer Andrew Davis encountered Zura first, and Zura fled on foot. *Id.* ¶ 17. Two other officers, including Officer Ludwig, responded to the scene to search for Zura. *Id.* ¶ 18. Officer Ludwig ultimately found Zura and pursued him on

1

foot as he fled down the street. *Id.* ¶ 18–20. According to Zura, although he was unarmed and posed no reasonable threat to officers or the public, Officer Ludwig deployed his taser. *Id.* ¶ 22–24. The taser struck Zura in the back and caused him to fall face-first to the pavement. *Id.* ¶ 25. As a result of the fall, Zura suffered multiple, severe facial fractures and head injuries including lost teeth. *Id.* ¶ 26. This incident was captured on body cam video. *Id.* ¶ 28.

## II.     STANDARD OF REVIEW

Defendants seek to dismiss Zura's Complaint for failure to state a claim under Rule 12(b)(6). A party may move to dismiss a complaint for "failure to state a claim under which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This, however, requires "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, under the plausibility standard set forth in *Twombly* and *Iqbal*, courts play an important gatekeeper role, ensuring that claims meet a plausibility threshold before defendants are subjected to the potential rigors (and costs) of the discovery process. "Discovery, after all, is not designed as a method by which a plaintiff discovers whether he has a claim, but rather a process for discovering evidence to substantiate plausibly-stated claims." *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

In deciding a motion to dismiss, the district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). In doing so, the district court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby Cnty., Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000).

### III. LAW & ANALYSIS

Based on the events that occurred in the early hours of September 29, 2023, Zura asserts three claims: (1) an excessive use of force claim against all Defendants, (2) an assault and battery claim in violation of Ohio law against all Defendants, and (3) a failure to train and supervise claim against Defendants City of Cincinnati and Chief Theetge. Doc. 1. The Court will now consider each of Zura's claims against the arguments asserted in Defendants' Motion to Dismiss (Doc. 6).

#### A. Plaintiff has failed to plausibly allege a violation of his constitutional rights.

Zura alleges that Officer Ludwig used excessive force when he deployed his taser to stop Zura from fleeing. Doc. 1, ¶¶ 38–45. Zura extends his excessive force claim to Cincinnati Chief of Police Theetge and the City of Cincinnati under a municipal liability theory. *Id.* Defendants, however, counter by arguing that they are entitled to qualified immunity. Doc. 6, PageID 25–27.

Dismissal on the basis of qualified immunity at the pleading stage is disfavored. *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 761 (6th Cir. 2020). "But this is only a 'general preference,' not an absolute one." *Id.* (quoting *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019)). More recently the Sixth Circuit has held that "a district court cannot defer a decision on qualified immunity merely because it must make the decision on a Rule 12 motion." *Saalim v. Walmart,*

*Inc.*, 97 F.4th 995, 1003 (6th Cir. 2024). Along these same lines the Sixth Circuit reasoned that "[b]ecause qualified immunity is a defense not just to liability but to having to litigate the suit itself, a district court must resolve the question as soon as possible." *Id*. When balancing the interests served by qualified immunity, some claims, particularly insubstantial ones, should be resolved before discovery. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To decide whether that is the case here, the Court must consider (1) whether Zura has plausibly alleged a violation of his constitutional rights, and (2) whether that constitutional right was clearly established. *Id.* at 227. If a plaintiff fails to satisfy either step identified under *Pearson*, "then qualified immunity shields the government officer from civil damages." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (citing *Pearson*, 555 U.S. at 236). In this instance, Zura's claim does not make it past the first step in the two-part inquiry.

  Whether Zura has plausibly alleged a violation of his constitutional rights begins with an analysis of the claim measured against the protections offered under the Fourth Amendment. The Fourth Amendment guarantees the right of every person in our country to be free from unreasonable seizures, which includes protection from use of excessive force. *Thomas v. City of Columbus*, 854 F.3d 361, 365 (6th Cir. 2017). Excessive force is not easily defined, but the Sixth Circuit often sorts taser cases "based on '[a] simple dichotomy'—was the suspect actively resisting or not?" *Perez v. Simpson*, 83 F.4th 1029, 1031 (6th Cir. 2023) (quoting *Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015)). If that answer is yes, then use of a taser is not excessive force. But what qualifies as active resistance? The Sixth Circuit has made clear that fleeing from officers does constitute active resistance, *see VanPelt v. City of Detroit*, 70 F.4th 338, 340 (6th Cir. 2023)), meaning that it is reasonable, and not excessive force, when an officer tases an individual fleeing the scene where an offense has taken place

and refuses to submit to an investigatory stop or arrest. *See Brown v. Giles*, 95 F.4th 436, 439 (6th Cir. 2024); *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 496 (6th Cir. 2012).

Here, Zura admits that he fled from officers twice. Doc. 1, ¶¶ 17, 20. Zura argues, however, that rather than stopping him from fleeing by using a taser, Officer Ludwig should have stopped his pursuit and located him at his residence at a later time given that the underlying circumstances involved a nonviolent motor vehicle accident. Doc. 7, PageID 46–48. But in doing so, Zura ignores the elephant in the room—that is, he fails to acknowledge that the Sixth Circuit has held that tasing a suspect actively resisting arrest by fleeing from a crime scene, is not excessive force. *Perez*, 83 F.4th at 1031; *Brown*, 95 F.4th at 439. Because Zura was observed fleeing the scene of an accident, prompting the officers to give chase and thus, actively resisting arrest, Officer Ludwig did not use excessive force when deploying his taser. Thus, because under Sixth Circuit precedent Officer Ludwig did not use excessive force, he did not violate Zura's constitutional rights. As a result, Defendant Ludwig is entitled to qualified immunity for his actions. *See Pearson*, 555 U.S. at 231. For sake of argument, even assuming that Zura plausibly alleged a violation of his constitutional rights, Zura has failed to plausibly allege that the right to be free from excessive force through use of a taser while fleeing was clearly established. To the contrary, the Sixth Circuit has said, "[o]ur cases firmly establish that it is *not* excessive force for the police to tase someone (even multiple times) when the person is actively resisting arrest." *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015). Active resistance includes disobeying an officers' command to stop. *Id.* at 643.

Further, since Zura has failed to allege a violation of his constitutional rights, his excessive force claim against the remaining Defendants, Chief Theetge and the City of Cincinnati, must also be dismissed. *See Roell v. Hamilton Cnty. Bd. of Comm'rs*, No. 1:14-cv-

5

637, 2016 WL 4363112 (S.D. Ohio Aug. 16, 2016) (holding that because plaintiff failed to establish an underlying constitutional violation, the § 1983 claims against the sheriff and the city failed); *see also Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers.").

### B. Plaintiff has failed to plausibly allege a *Monell* claim.

To establish his claim that the City of Cincinnati is liable for the purported unlawful actions of its officers, Zura "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978)). Zura can make this showing in one of four ways: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.* Here, Zura alleges a policy of inadequate training and supervision relative to the use of tasers. But as discussed above, Zura has not plausibly alleged a constitutional violation. It then follows that he cannot maintain a failure to train or supervise claim because "[t]here can be no liability under *Monell* without an underlying constitutional violation." *Sensabaugh v. Halliburton*, 937 F.3d 621, 630 (6th Cir. 2019) (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)); *see also VanPelt*, 70 F.4th at 341 (rejecting the plaintiff's *Monell* claim absent a constitutional violation).

Even if he had plausibly alleged a constitutional violation, Zura has not shown that the City of Cincinnati and Chief Theetge's failure to train officers on the proper use of tasers "amounts to deliberate indifference" as required under *Monell*. *City of Canton v. Harris*, 489

U.S. 378, 388 (1989). To meet his burden, Zura must offer evidence that shows "prior instances of unconstitutional conduct demonstrating that the [municipality] ha[d] ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)). He has failed to do so.

### C. Plaintiff has failed to plausibly allege a state-law claim for assault and battery.

Beyond the constitutional claims advanced above, Zura also asserts a claim for assault and battery under Ohio law. This claim, however, fares no better than the others because "in the context of excessive force claims, state law claims for assault and battery 'rise and fall' with the federal excessive-force claims." *Williams v. Collins*, No. 15-cv-337, 2017 WL 1196114, at *7 (S.D. Ohio Mar. 31, 2017) (citing *D'Agastino v. City of Warren*, 75 F. App'x 990, 995 (6th Cir. 2003)). Further, Ohio law makes clear that "only in cases where excessive force is used, that is, force going clearly beyond that which is reasonably necessary to make the arrest, can such force be claimed an assault and battery by the person arrested." *Schweder v. Baratko*, 103 Ohio App. 399, 403 (8th Dist. 1957). As previously noted, Zura has failed to plausibly allege a constitutional claim predicated on the excessive use of force cognizable under existing case law. *VanPelt*, 70 F.4th at 340. As such, Zura's assertion that Defendants "intentionally and maliciously applied and threatened to apply unlawful and unnecessary force against [him]" rings hollow. Compl., Doc. 1, ¶ 47; *see also* Ohio Rev. Code § 2744.03(A)(6)(b); *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 511 (6th Cir. 2012). Ohio's statutory immunity therefore applies. Zura's state-law claim must be dismissed.

**D. The Court declines to grant Plaintiff leave to amend his Complaint.**

Zura requests, in an alternative to dismissal, that he be granted leave to amend his Complaint. It is within this Court's discretion to grant leave and in fact, courts should freely grant leave when justice so requires. Fed. R. Civ. P. 15(a)(2). At the same time, however, when a plaintiff requests leave, they shall do so with particularity. *Liberty Legal Found. v. Nat'l Democratic Party of the USA, Inc.,* 875 F. Supp. 2d 791, 803 (W.D. Tenn. 2012).

Here, Zura requests leave to "clarify the claims brought in this case with specific reference to 42 U.S.C. § 1983." Doc. 7, PageID 61–62. This barebones request, set forth in Zura's opposition to Defendants' Motion to Dismiss, fails to meet the pleading standard typically employed by district courts in our circuit, vis-à-vis, the proposed amended complaint must be well grounded in facts and supported by examples. *See Evans v. Pearson Enters.*, 434 F.3d 839, 853 (6th Cir. 2006) (finding no abuse of discretion in denying leave to amend where plaintiff requested leave "in a single sentence without providing grounds or a proposed amended complaint to support [his] request"). Accordingly, Zura's request for leave to amend his Complaint is denied.

## IV. CONCLUSION

For these reasons, Defendants' Motion to Dismiss (Doc. 6) is **GRANTED**.

**IT IS SO ORDERED.**

August 4, 2025

Jeffery P. Hopkins
United States District Judge

8